The next argument on the calendar for today is 22-2056, United States v. Williams. Mr. Matson, whenever you're ready. Thank you. May it please the court. Chandler Matson, on behalf of Tawan Williams. Your honors, why am I here? Because your honors must be wondering, under the analysis that's been given to the trial courts, there really wasn't a great error in this case. If you look at the factors under the Speedy Trial Act and the way, in particular, the ends of justice exception excludes time from that calculation, while the prosecution arguably has a better argument than I do, and I fail, so why appeal it? Because, your honors, what I tried to bring to the attention of the trial court, and I'll try and bring attention to this court, is over the past two and a half years, what we've seen is a remarkable event that really illuminated something that's missing in our law and our analysis, which are the conditions of confinement for those in pretrial detention can be excruciating, can be punishing, can be something that we would not expect or tolerate in this country. And we've excused it because it was a pandemic. We've said it's unprecedented, so we all did the best we could. And we made the decisions that we made to protect the health and safety of the public. I can tell you, for those who are incarcerated in pretrial detention, who are presumed innocent, they do not see that their interests were protected. They do not see their health and safety and welfare as being protected. What they saw was that they were in solitary confinement for weeks on end. Duann Williams was homeless at the age of eight, abandoned, no formal education, no mental health treatment, no psychological intervention, no counseling of any kind to speak. Mr. Williams is a damaged individual who is regularly subjected to solitary confinement. I brought this to the attention of the trial court and I bring it to the attention of this circuit. There is unfortunately no factor in the analysis that says a trial court will consider the conditions of confinement. The language is length of confinement. The language is the responsibility of the government for any delays in bringing the case to trial or the trial needs of the defense, which focus on discovery. I have to get my case ready for trial to be effective. I have to do that. But nowhere in that do we ask, what is this person, this pretrial detainee, presumed innocent, what is that person actually going through? And when it came to the pandemic, it's an issue that I've been bothered by for a long time. In the pandemic, it was really heightened and it became an extreme event that really demonstrated that we are punishing people prior to their day in court, prior to their trials. And it's justified for a lot of reasons. No case is going to trial in 90 days. Not in today's day and age. Cell phones, computers, cloud technology, you can't have effective assistance of counsel in 90 days. But somewhere we have to have a remedy. The trial court says, well, we've held this person for so long and even though the delays are in light of what we're trying to accomplish, maybe we need to do something for this individual who has needs as well in their life, in their liberty, mental health counseling, education, a point of rehabilitation, something. But we don't consider the conditions of confinement because the Second Circuit has never said that's a fact you should consider. Well, I don't gainsay what you've just said. What is it you're asking us to do? Revisit the factors of reasonableness that exist under both H6 and H7, Judge. Then that's what says exclusions of the Speedy Time Act as given to co-defendants apply to the defendant so long as those exclusions are reasonable. Did you ask for a severance? I've asked for a severance now, Judge. Those severance cases, they're all under a motion to dismiss. The Speedy Trial Act, of course, can give rise to a motion to dismiss. And you shouldn't be considering punishment there. That's a totally different consideration because that is the prosecution losing its ability to prosecute a case. That has nothing to do with what I'm talking about here. When we're talking about pretrial detainees, we need to focus on the pretrial detainee. I mean, sometimes severance is just strict, Judge. I may have misunderstood you, but I thought you were inviting us to revisit the text of the statute, the text of the Speedy Trial Act. Judge, really, all I'm asking to do is, in that reasonable analysis, give the trial courts some guidance that they can consider as a factor the conditions of confinement. That's all I'm asking. Your argument is that reasonableness should incorporate not just the length of the delay, but the conditions of confinement. Correct, Judge. You said it more succinctly than I did, obviously. But that seems reasonable to me. OK, you're reserved a minute for rebuttal. Thank you. We'll let you hear it from the government. Good morning. May it please the court. I'm John Boccia, Assistant United States Attorney. I represent the government in this appeal. This court should affirm the district court's decision denying Mr. Williams' motion for pretrial release. The district court found that Mr. Williams posed both a danger to the community and a risk of flight. On appeal, Williams does not ask the court to revisit those decisions, but rather makes these speedy trial and due process arguments, which the government disagrees with. On the Speedy Trial Act issue, Williams is not entitled to release under 3164B's 90-day time limit, because as the text of 3164B states, the periods of delay enumerated in section 3161H are excluded in computing the time limitations specified in this section. And that's also consistent with this court's holdings in the Melendez-Carrion and Gonzalez-Claudio decisions, both of which hold that the time exclusions of 3161H apply to toll the 90-day limit in 3164B. The argument from Mr. Williams that the ends of justice continuance should mean something different when applied to 3161 versus 3164B is just not supported by the text or the case law of this court or other circuit courts of appeals, in particular the Ninth Circuit's decision in Torres in 2021. Even if that interpretation of the Speedy Trial Act at the ends of justice should mean one thing in 3161 versus something else in 3164B, even if that were a solid argument, another Speedy Trial provision, 3161H6, which provides for reasonable delays in multi-defendant cases, would toll the time here. And can I ask you, why does it make sense to have the severance requirement from Vasquez apply to the 90-day pretrial detention clock? I understand how that would apply for the 70-day trial clock, but it seems they're two different things. I don't think they're all that different, actually. Moving to sever is a defendant's way of saying that the defendant is prepared to go to trial, ready for that day in court. And that should apply with equal force to both the ends of justice continuance and the reasonable time limitation from the government's view. The- When will they ever get to the 90-day clock? How does this operate in practice, so that you would hit the 70 days, but not get to the 90 days? But I think you understand the question. Sure. When read in the context of the Speedy Trial Act time limits as a whole, there is a time when the 90-day clock still has force. And this is just, I'll answer the question, of course, but I'll also direct the court to the Torres decision, which lays this out very well. The first Speedy Trial limitation is the 30-day charging clock, from arrest to indictment, or from complaint to indictment. Then post-indictment, the 70-day clock kicks in, and the 90-day clock as well. So even reading all three of those time periods together, if the government were to take the full 30 days and the full 70 days, there would still be a time, a 10-day time period, when the 90-day clock would entitle a defendant to release, even without any time exclusions. So that 90-day clock still retains. The expression of the 70 days, it's dismissed. So what's happening between 70 and 90? Well, if you take the 30-day time period on the front end, the pre-indictment time clock, and add that to the 70 days, that's the 100-day period. And so therefore, the 90-day clock would still have, if the defendant were held in continuous detention. I think I understand what you're saying. I'm interested in the government's response to Mr. Mattson's contention that the conditions of confinement really need to be weighed in here somewhere. As I read the record, correct me if I'm wrong, this man has been in solitary confinement for a year and a half. I don't think that's in the record. I think he's had periods of solitary confinement. And those periods are, of course, due to his incarceration during the pandemic. And I've attached to, which in the record was incorporated in the briefing below, some of the policies of the facility where Mr. Williams is detained. And those policies list the times when individuals have needed to be in solitary confinement to protect the safety of inmates and visitors and facility staff. And he was in, if my year and a half is wrong, how long was he, what period that he was in solitary? I don't think that's been established by the record. And that is sort of a threshold point, which I'll make quickly before I sit down, which is that from the government's view, this notice of appeal didn't include the due process arguments. And those arguments really weren't passed upon by the district court below. Thank you. Thank you. Mr. Madsen, you've got a minute left. Thank you very much. Well, briefly as to that due process and whether it was raised below, I would point to my initial motion for Mr. Williams' release. It's at the appendix pages 83, 84, 86, and 87, wherein the Fifth Amendment and due process is raised within the context of release. And your honors, the Speedy Trial Act has to run hand in hand with due process concerns because the Speedy Trial Act was challenged and upheld because it was consistent with due process. Specifically, the Supreme Court found that the Speedy Trial Act did not violate due process because detention was extremely limited to stringent time standards. There is nothing in the Speedy Trial Act that does not preclude the consideration of the conditions of confinement. And because it has to be consistent with due process, there's nothing inconsistent with any of this statutory scheme or the Constitution that says you can't consider the conditions of confinement. In fact, if you want to know the difference between punitive and regulatory, you would have to look at the conditions of confinement. So we have to do that to ensure that due process has been assured to a defendant. Thank you, counsel. Thank you, your honors. Thank you both. I'll take the case under advisement. And the remaining three cases on the calendar for today are on submission. So that concludes our business for today. I'll ask the Court of Deputy to address. Court is adjourned. Thank you.